# Stamey, Appellant, v. Barkley.

*Practice, C. P.—Service of process—Proceedings to quiet title—Act of June 10, 1893—Answer—Waiver.*

Where on a petition under the Act of June 10, 1893, P. L. 415, to quiet title to coal land, the rule to show cause is not served on nonresident respondents "at their residence or place of business outside of the county or state where the land lies," but is served upon them personally, the service is invalid; but if the respondents voluntarily file an answer submitting themselves to the court on the merits of the controversy, they will be deemed to have waived the defect in the service.

| 211 | 313 |
| f 211 | 647 |
| f 211 | 648 |
| f 211 | 649 |
| f 211 | 650 |
| 211 | 313 |
| 219 | ²379 |

*Practice, C. P.—Cloud on title—Framing issue under the Act of June 10, 1893, P. L. 415.*

Where on an issue under the Act of June 10, 1893, P. L. 415, to quiet title to coal land, the respondents file an answer in which they assert the existence of a valid contract entitling them to purchase at a future time the land of which the petitioner was in possession, and they insist upon their right to have such contract continued as a cloud upon his title, the respondents are properly made plaintiffs in the issue, and the burden is upon them to establish the right which they claim.

*Practice, C. P.—Trial—Venire—Act of April 14, 1834, sec. 96, P. L. 333, and April 18, 1876, P. L. 29.*

Where an issue is framed after a venire has issued, the issue may be tried before the jury summoned under the venire, if it appears that the venire was issued more than thirty days before the day set for trial.

*Practice, C. P.—Rules of court—Trial—Suspension of rules—Continuance.*

The court may suspend a rule requiring trial lists to be prepared and publicly posted for at least six weeks before the commencement of the trial term, where it appears in the particular case as to which the rule was suspended that thirty-seven days elapsed between the framing of the issue and the trial, that every opportunity had been given to the parties to prepare for trial, and that the court had offered to give more time if it were needed for preparation.

Argued Oct. 18, 1904. Appeal, No. 18, Oct. T., 1904, by plaintiff, from judgment of C. P. Indiana Co., June T., 1903,

No. 140, on verdict for defendant in issue framed between W. H. Stamey, J. C. King and E. D. Carter as plaintiffs and W. F. Barkley as defendant. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and ELKIN, JJ. Affirmed.

Issue to quiet title to coal lands.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* are set forth in the opinion of the Supreme Court.

*Fred H. Ely*, with him *Elder Peelor*, *G. J. Feit* and *D. J. Driscoll*.—The service of the rule to show cause and of the copy of the petition upon the respondents was not good.

After the venire has been issued and a jury summoned, a cause cannot be put down for trial by that jury.

It has been the uniform practice under the act of 1893, to make the petitioners plaintiffs in the issue and put the burden of proof upon them : Del. & Hudson Canal Co. v. Genet, 169 Pa. 343 ; Ullom v. Hughes, 204 Pa. 305.

*Ernest Stewart*, with him *S. J. Telford*, for appellee.

OPINION BY MR. JUSTICE BROWN, April 10, 1905 :

This proceeding was instituted by the appellee under the Act of June 10, 1893, P. L. 415, for the purpose of quieting title to coal land of which he was the legal owner. On the presentation of his petition to the court, setting forth that the appellants disputed and denied his right to the land and asserted a right in themselves to it by virtue of a certain written agreement, a rule was granted to show cause why an issue should " not be framed by the court to test and determine the respective rights of the petitioner and W. H. Stamey, J. C. King and E. D. Carter, aforesaid, to the coal underlying the land described in the petition, and the right to mine and remove the same." The appellants were not residents within the jurisdiction of the court, as was averred in the petition, and, in accordance with the second section of the act of 1893, leave was granted to serve the rule on them at their respective resi-

dences in Reynoldsville and Erie, this state. The return of the sheriff was that he had served the rule on April 11, 1903, on the respondents " by producing to each the original, informing each of its contents, and by handing to each a true and attested copy thereof, as well as a copy of the petition and article of agreement." On May 2, 1903, two days before the return day of the rule, an appearance de bene esse was entered for them, and on the return day a motion was made to set aside the service, for the reason that it had not been made on any one of them at his residence or place of business. On the same day this motion was refused, and, by the first assignment, we are asked to say that this refusal is reversible error appearing in limine.

In the absence of any provision in the act of 1893 for service of a rule beyond the jurisdiction of the court granting it, on persons not resident therein, there could not be such a service. The act provides that when the person or persons denying the right, title or right of possession of the person or persons in possession of the land are not residents within the jurisdiction of the court to which the petition for quieting the title is presented, that court may make an order that the rule to show cause why an issue should not be framed shall be served on the person or persons denying the right of the petitioner " at their residence or place of business outside of the county or state where the land lies." The place where such rule is to be served on nonresidents within the court's jurisdiction is " at their residence or place of business outside of the county," and, as the statute so provides, service elsewhere on them outside of the county is not good. In Lehigh Valley Insurance Co. v. Fuller et al., 81 Pa. 398, the process against the insurance company, whose place of business was not in the county in which the same was issued, was served upon an agent of the company, the return being that service was so made upon him. Judgment was taken against the company by default. On the application to open it one of the reasons given was that there had not been proper service upon the company, the act of assembly requiring that service upon its agent in a county in which it did not reside must be at the usual place of business or residence of such agent. In reversing the court below for refusing to open the judgment, it was said by SHARS-

WOOD, J. : " Conceding that an attachment execution, with the clause of scire facias to the garnishee embodied in it, is a 'summons or other mesne process,' the legislature has seen fit to provide that the service shall be 'at the usual place of business or residence' of the agent, and in no other way. A personal service is not sufficient. Why, it is not our place to inquire. Ita lex scripta est." The direction of the statute as to service of process must be obeyed, or the court does not acquire jurisdiction over the person named in it: Wright v. Douglass, 3 Barbour, 554. As there is no return that the rule was served in accordance with the order of the court, and as directed by the statute, and it affirmatively appears from the answer of the respondents that it had not been so served, the motion to set the service aside ought to have prevailed ; and, but for a reason about to be given, the first assignment of error would be sustained.

On May 4, 1903, immediately after the court refused to set aside the service of the rule, the appellants, without any order directing them to do so, but voluntarily, so far as can be gathered from the record, filed an answer to the appellee's petition. While it is true that in the concluding paragraph they aver the irregularity of the service and again ask that it be set aside, the answer as a whole is not only a denial of the material averments of the petition, but an assertion that John Mc-Gaughey, as the duly authorized agent of the petitioner, had entered into a valid contract with them for the sale of his coal. By this voluntary answer, going beyond a denial of the court's jurisdiction over them, they submitted to it the question of the validity of the contract on which they rely as giving them a right to purchase the coal at a future time. They practically asked the court to determine their rights under the agreement, and having so voluntarily submitted that question to it, they submitted themselves to its jurisdiction. This cannot be questioned in the light of any of our cases. In Coleman's Appeal, 75 Pa. 441, where we held that service of process had been properly set aside after an appearance de bene esse and the filing of an answer, the defendant had been compelled to answer by a rule, and, in answering under such compulsion, had reserved all exceptions to the order and manner of service.

If, upon the hearing of a rule for an issue, it shall appear to

the court that the facts set forth in the petition are true, it shall be the duty of the said court " to frame an issue of such forms as the court shall deem proper between the respective parties, to settle and determine the right and title of the respective parties to said land." Of this we have said: " The control of the court over both the form and the substance of the issue is ample, and should be exercised to fit the requirements of the real controversy between the parties :" Ullom v. Hughes, 204 Pa. 305.

That the appellants were properly made the plaintiffs we have no doubt. By their answer they boldly asserted the existence of a valid contract entitling them to purchase the appellee's land at a future time, and insisted upon their right to have it continued as a cloud upon his title. He was in possession of the land. If they had a right to oust him under the agreement given them by McGaughey the burden was on them to affirmatively establish it, and the issue between them and the appellee was properly made up for the determination of the following questions: " (1) The authority of John Mc-Gaughey to make and sign the name of the defendant to the agreement of February 25, 1902, a copy of which is attached to the petition. (2) Is such agreement, if John McGaughey had authority to sign the name of the defendant thereto, now in full force and effect? (3) If such agreement had the name of the defendant signed thereto by John McGaughey through valid authority, are the plaintiffs entitled to specific performance thereof? (4) Have the plaintiffs now any right, title, interest or legal claim to the coal under the defendant's land by virtue of the agreement of February 25, 1902, or acts and transactions under it between the plaintiffs and the defendant ?" The second and third assignments are dismissed.

The issue was framed September 5, 1903. It was placed on the trial list for the week beginning October 12, 1903. On September 29 the appellants made formal objection to the trial of the cause at the court to be held October 12, assigning as a reason therefor that the venire, issued on August 3, 1903—before the issue was framed—was in violation of the Act of April 14, 1834, P. L. 333. The 96th section of that act provides: " The Prothonotaries and clerks of the several courts of common pleas, district courts of nisi prius of this Common-

wealth shall, as soon as conveniently may be after the list of
the causes at issue and for trial at any term of the respective
court shall have been settled, and at least thirty days before
the beginning thereof, make out and forthwith deliver to the
sheriff of the respective county a writ, commanding the said
sheriff and the commissioners of the said county to impanel,
and the said sheriff to summon a jury, or a jury of special
jurors, as the case may be, for the trial of all such issues." By
the later Act of April 18, 1876, P. L. 29, the judges of the
several judicial districts of the commonwealth are authorized
and empowered to cause the issuance of venires, and the only
proviso as to when a venire shall issue is found in the third
section, which provides that " each venire shall issue at least
thirty days before the first day on which the jurors to be sum-
moned under it shall be called to attend." As the venire in
this case had been issued on August 3, 1903—more than thirty
days before October 12—there was no error in overruling the
objection to the trial of the case before the jurors in attend-
ance.

On October 12, 1903, when the case was called for trial, an
application was made for a continuance because it had not been
set down for trial in accordance with the following rule of
court : " At least six weeks before the commencement of each
term the prothonotary shall make out the trial list and cause
the same to be publicly posted in his office, and printed slips
thereof made and furnished to the counsel interested." The
issue was framed September 5—thirty-seven days before Octo-
ber 12—and from the opinion refusing the continuance it
appears that every opportunity had been given the plaintiffs to
prepare for trial. The court went further and stated that if
any good reason was given why more time was needed for
preparation, it would be considered and further time granted.
The case and others like it had been before the court in many
phases, and the learned trial judge says it was the intention to
have a list specially made out for an early disposition of them,
all of which the plaintiffs knew. That a court can suspend
its rules is as certain as that it can make or revoke them, if
such suspension results in no material injury to the one com-
plaining of it. If one having reason to rely upon a rule acts
accordingly, and is then manifestly injured by the court's arbi-

trary disregard of it, the wrong done will be corrected here. An illustration of this is Schrimpton v. Bertolet, 155 Pa. 638. There, counsel for both parties had agreed to continue the case under a rule of court permitting continuance once by consent. When it was called the court disregarded this rule and forced the defendant to trial. He had come into court without any witnesses, having relied upon the rule, under which his counsel had made an agreement with counsel for the plaintiff to continue. As he was manifestly wronged, the judgment was reversed. All of our own cases agree that, in the application of its own rules, a court can be reversed only for manifest and material error: Bair v. Hubartt, 139 Pa. 96. In the present case it is most manifest that no possible wrong was done to the plaintiffs by the court's failure to continue because the case had not been on a trial list made out by the prothonotary at least six weeks before the commencement of the term. On the contrary, for good reasons given by the court in the opinion refusing the continuance, it was properly taken out of the rule, with due regard for the rights of the plaintiffs, who were notified that, for any good cause shown by them, a continuance would be granted. They failed to show any, and, having had thirty-seven days within which to prepare for trial, the court committed no error in refusing to give them further time.

After counsel for the appellants had notified the court that they would not appear at the trial, the trial judge properly directed it to proceed without them. This disposes of all the questions raised by the assignments, and the judgment is affirmed.